```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>KELVIN FORD,<br><br>                Defendant. | HON. JEROME B. SIMANDLE<br><br>Criminal No. 04-0562 (JBS)<br><br>**OPINION** |

APPEARANCES:

Christopher J. Christie
UNITED STATES ATTORNEY
    By:  Diana Vondra Carrig
        Assistant United States Attorney
United States Attorney's Office
401 Market Street, 4th Floor
Camden, New Jersey 08101

Ralph A. Jacobs, Esquire
RALPH A. JACOBS & ASSOCIATES LLC
34 Tanner Street
Haddonfield, New Jersey 08033
    Counsel for Defendant Kelvin Ford

**SIMANDLE,** District Judge:

    This matter comes before the Court upon Defendant Kelvin Ford's pretrial motion to limit the Government's use at trial of Defendant's proffer statements.

## BACKGROUND

    Defendant Kelvin Ford, who is presently accused of robbing Fleet Bank in Mays Landing, New Jersey on June 11, 2003 and Commerce Bank in Somers Point, New Jersey on June 12, 2003, was charged by federal Criminal Complaint on June 13, 2003.  On July 17, 2003, Defendant met with Assistant United States Attorney

Diana Vondra Carrig and FBI Special Agents Joseph Furey and Peter Lucas for the purpose of proffering with the Government in an attempt to cooperate.  Prior to that proffer session, the parties signed a Proffer Agreement contained in a letter dated July 17, 2003 from the Assistant U.S. Attorney to Lisa Evans, Assistant Federal Public Defender, counsel for Defendant.  That Proffer Agreement provides in relevant part that:

> With respect to the interview of Kelvin Ford ("your client") by representatives of the United States Attorney's Office for the District of New Jersey and the Federal Bureau of Investigation to be held today ("the interview"), the following terms and conditions apply:
>
> 1.  Should your client be prosecuted, no statements made by your client during the interview will be used against your client in the government's case-in-chief at trial or for purposes of sentencing, except as provided below.
>
> . . .
>
> 4.  <u>The government may use your client's statements and any information provided by your client to cross-examine your client and to rebut any evidence or arguments offered on your client's behalf</u>.

(Government's Ex. A, July 17, 2003 Proffer Agreement) (emphasis added).  Both defense counsel and Defendant signed the Proffer Agreement, acknowledging that they read it, understood it and accepted it as the "full agreement between the parties regarding the government's use of the statements" made by Kelvin Ford during the meeting.  (<u>Id</u>.)  Defendant subsequently made several

inculpatory statements, including admitting that he robbed both the Fleet Bank and Commerce Bank with co-defendants Donald Johnson and Christopher Howard, as charged in the Criminal Complaint.  Ford also confessed to having committed a number of robberies, home invasions and acts of violence in Maryland.

In light of Defendant Ford's statements about having committed significant additional criminal conduct in Maryland, and the Government's apparent interest in using Ford as a cooperating witness, another proffer session was scheduled for August 25, 2003, so that law enforcement officers from the relevant counties could be present.  In preparation for that second proffer session, a second Proffer Agreement was drafted and entered into at Defendant Ford's request, binding the relevant Maryland State law enforcement officers to the terms of the initial Proffer Agreement.  (Government's Ex. B, August 21, 2003 Proffer Agreement.)  This second Proffer Agreement contained identical terms as the first Proffer Agreement with respect to the uses that the Government was permitted to make of Ford's statements.  In addition to that agreement, Defendant negotiated a separate Proffer Agreement with officials from the District of Maryland, which contains different terms.  (See Government's Ex. C, District of Maryland Proffer Agreement.)

Again, Defendant made a number of inculpatory statements and, as a result of time constraints, the parties agreed to meet

again for another proffer session, which was subsequently held on September 11, 2003.  At that time, Defendant and his attorney again met with the Assistant U.S. Attorney, two FBI agents, and a detective from Prince Georges County, Maryland for this third proffer session.  No additional Proffer Agreement was entered into, but it was understood that all parties were proceeding pursuant to the terms of the prior Proffer Agreements.

Defendant Kelvin Ford ultimately determined that he no longer wished to cooperate with the Government and was therefore arraigned on August 9, 2004, at which time he entered a plea of not guilty to both counts of the Indictment.  Defendant's pretrial motion seeks, inter alia, to limit the Government's use of Defendant's proffer statements at trial.

## DISCUSSION

Defendant's motion arises out of his understanding that the Government has taken the position that, despite its promise of use immunity (see Term and Condition #1 of July 17, 2003 Proffer Agreement), it may introduce Defendant's proffer statement to cross-examine Defendant and to rebut any exculpatory evidence or arguments of counsel offered on Defendant's behalf.  Specifically it is the "or arguments" language of the Proffer Agreements that gives rise to Defendant's instant concern.  (See Term and Condition #4 of July 17, 2003 Proffer Agreement.)  The Government, meanwhile, argues that the plain language of the

Proffer Agreements expressly delineates two separate ways that the Government can use Defendant's proffer statements against him at trial: (1) to cross-examine Defendant should he take the stand; and (2) to rebut any evidence or arguments offered on Ford's behalf.

The question presented here is that left unresolved by the United States Supreme Court in United States v. Mezzanatto, 513 U.S. 196 (1995).  In Mezzanatto, the Supreme Court held that even though statements made during plea negotiations are generally inadmissible under Fed. R. Evid. 410, a defendant may waive the right to prevent their admissibility so long as the waiver is knowing and voluntary.  The Court concluded that since "[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution," id. at 201, evidentiary rules should be subject to a similar presumption.  Although the majority opinion in Mezzanatto garnered the vote of seven Justices, three of those joined in the writing of a concurrence, expressing doubt about whether a waiver to allow use in the Government's case-in-chief would be valid.  Id. at 211.[1]  Defense counsel argues that allowing the Government

---

[1]Justice Ginsburg, with whom Justice O'Connor and Justice Breyer join, concurring:

> The Court holds that a waiver allowing the Government to impeach with statements made during plea negotiations is compatible with Congress' intent to promote such plea

5

to use Defendant's proffer statements in its case-in-chief to rebut any suggestion made to the jury in opening statements on behalf of Defendant Ford that contradicts proffer statements would undermine basic principles of contract interpretation and infringe upon Defendant's Fifth and Sixth Amendment rights.

Following the Court's decision in Mezzanatto, lower courts throughout the country have dealt with the issue presented here differently.  In United States v. Duffy, 133 F. Supp. 2d 213 (E.D.N.Y. 2001), the defendant signed a proffer agreement and engaged in a proffer session with the Government, during which he admitted that he was part of the charged conspiracy and provided specific information regarding his role.  Id. at 215.  The Duffy court held that the proffer agreement, which allowed the Government to rebut arguments made at trial that were inconsistent with the defendant's proffer statements, was invalid because it effectively forced the defendant to "forfeit[] fundamental aspects of his [Sixth Amendment] rights to make a [meaningful] defense at trial and to the effective assistance of counsel at trial."  Id. at 216, 218.  The Court reasoned that the possibility that such proffer statements could be admitted at

---

> bargaining.  It may be, however, that a waiver to use such statements in the case in chief would more severely undermine a defendant's incentive to negotiate and thereby inhibit plea bargaining.  As the Government has not sought such a waiver, we do not here explore this question.

trial effectively precluded the defendant from asserting "any affirmative theory of factual innocence" and limited defense counsel's argument at trial to "reasonable doubt."  Id.  The decision in Duffy, however, stands largely alone, as the overwhelming majority of cases addressing this issue have come to a very different conclusion.[2]

In United States v. Krilich, 159 F.3d 1020 (7th Cir. 1998), the Seventh Circuit upheld the introduction of a proffer statement to impeach not only the defendant's witnesses, but also to rebut arguments suggested by defense counsel in his cross-examination of the Government's witnesses.  There, the defendant had signed a proffer agreement containing the following conditional waiver:

> [S]hould [Krilich] subsequently testify contrary to the substance of the proffer or otherwise present a position inconsistent with the proffer, nothing shall prevent the government from using the substance of the proffer at sentencing for any purpose, at trial for impeachment or in rebuttal testimony, or in a prosecution for perjury.

Id. at 1024.  Introduction of defendant's proffer statements thus was proper if either his testimony or evidence that he presented through the testimony of others contradicted the proffer.  The court rejected the defendant's request to limit the waiver to exclude evidence obtained by cross-examination of the

---

[2] To date, the Third Circuit has not opined on the issue left unresolved by Mezzanatto.

prosecution's witnesses, stating that "[e]vidence is evidence, whether it comes out on direct or cross-examination. One can 'otherwise present' a position through arguments of counsel alone, so it is easy to see how a position can be 'presented' by evidence developed on cross-examination and elaborated by counsel." Id. at 1025.

In addition, in United States v. Burch, 156 F.3d 1315 (D.C. Cir. 1998), the D.C. Circuit held that the defendant's waiver of his rights under Fed. R. Crim. P. 11(e)(6) and Fed. R. Evid. 410 in a plea agreement was valid, even though he later withdrew the plea. The Burch court, unable to discern an acceptable rationale for refusing to extend the Supreme Court's holding in Mezzanatto, held that statements made during the plea allocution before the court and during a subsequent debriefing with Government agents were admissible not only for rebuttal or impeachment purposes, but also during the Government's case-in-chief. Id. at 1321-23.

In United States v. Gomez, 210 F. Supp. 2d 465 (S.D.N.Y. 2002), the court was faced with a proffer agreement substantially similar to the one at issue here. There, the proffer agreement clearly and unambiguously provided that the Government could use the proffer statements to rebut inconsistent arguments made by counsel:

> [T]he Government may use statements made by
> [Gomez] at the [proffer] meeting . . . for
> the purpose of cross-examination should

> [Gomez] testify, or <u>to rebut any evidence or arguments offered by or on behalf of [Gomez]</u>.

<u>Id</u>. at 472 (emphasis in original). The court held that the proffer agreement signed by the defendant was enforceable and that the Government was allowed to use proffer statements made by the defendant to rebut evidence or arguments offered on the defendant's behalf at trial even when the defendant did not testify. <u>Id</u>. at 474-75. The <u>Gomez</u> court enforced the proffer agreement in its entirety after finding that the defendant knowingly and voluntarily signed the proffer agreement. <u>Id</u>. at 475-76. Finally, the court found that defense counsel could present a meaningful defense without opening the door to the admission of proffer statements by challenging the credibility of the Government's witnesses and the weight and sufficiency of the Government's evidence. Moreover, the court ruled that enforcement of a proffer agreement does not preclude defense counsel from taking a position or presenting evidence inconsistent with a defendant's proffer statements; in so doing, however, it is only fair that the Government be permitted to present the defendant's own words in rebuttal. <u>Id</u>. at 476.

In <u>United States v. Velez</u>, 354 F.3d 190 (2d Cir. 2004), the Second Circuit, citing with approval the district court's holding in <u>Gomez</u> and declining to adopt the position taken by <u>Duffy</u>, upheld a similar proffer agreement, which broadly stated that "the Government may . . . use statements made by [defendant] at

the meeting to rebut any evidence or arguments offered by or on behalf of [defendant] . . . at any stage of the criminal prosecution . . . ." Id. at 192. The Second Circuit stated:

> [W]e hold that, where a proffer agreement is entered into knowingly and voluntarily, a provision in which defendant waives his exclusionary privilege under Federal Rule of Evidence 410 by permitting the Government to introduce defendant's proffer statements to rebut contrary evidence or arguments presented by the defense, whether or not defendant testifies, is enforceable.

Id. at 196. The Second Circuit, as did the district court in Gomez, placed significant weight on the dictates of fairness in reaching its conclusion.

Defendant argues here that allowing the Government to introduce the proffer statement in its case-in-chief should defense counsel argue innocence or challenge the testimony of key witnesses goes so far as to effectuate a waiver of Defendant's Fifth and Sixth Amendment rights, which were not knowingly and intelligently waived. The proffer letter does not alert a defendant, counsel maintains, to the fact that, as a practical matter, he is foregoing the right to have counsel cross-examine witnesses or vigorously contest the sufficiency of the evidence.

The Government, however, contends that the admission of Defendant's proffer statements to impeach or rebut inconsistent testimony and evidence will not deny Ford's right to mount a defense at trial or to have effective assistance of counsel in

10

that endeavor.  Indeed, defense counsel may argue that the Government has failed to meet its burden of proving Ford guilty and by presenting evidence, making arguments and asking questions that challenge the credibility of the Government's witnesses and the weight and sufficiency of the Government's evidence. Moreover, the Government argues that Defendant's Proffer Agreement should be enforced as it advances the truth-seeking function of trials.  See United States v. Chaparro, 181 F. Supp. 2d 323, 335 (S.D.N.Y. 2002) ("Enforcing proffer agreements . . . enhance[s] the integrity of the judicial truth-seeking function").  If the Proffer Agreement provisions at issue here are not enforced, the Government maintains, a defendant will have less incentive to be truthful during the proffer meeting because he will know that his misstatement cannot be used against him at trial so long as he does not testify.

In the present case, Defendant Ford entered into the Proffer Agreements knowingly, voluntarily, and with the effective assistance of experienced counsel, in hopes of achieving an eventual cooperation agreement with the Government, and Defendant does not argue to the contrary.  Therefore, he agreed with the prosecutor that his own words could be used against him at trial not only to cross-examine him if he chose to testify at trial, but also "to rebut any evidence or arguments offered on your client's behalf."  (Government's Ex. A, July 17, 2003 Proffer

11

Agreement at ¶4, supra.)  Defendant agrees that the proffer statement becomes admissible if the defense presents evidence, by the Defendant or Defendant's witnesses, inconsistent with the statement of Defendant in the proffer session.  Defendant argues, however, and this Court agrees, that the immunity agreement is not set aside as soon as defense counsel makes any argument on Defendant's behalf at trial.  To interpret the phrase "any . . . arguments offered on your client's behalf" to include arguments holding the Government to its burden of proof beyond a reasonable doubt or pointing to gaps in the Government's evidence on an essential element of proof, would go further than the Defendant's agreement, because it would be the equivalent of saying that if defense counsel even argues anything at all at trial, the proffer statement becomes evidence against Defendant.  These Proffer Agreements of July 17, 2003 and August 25, 2003, do not contain such a waiver of essentially the right to plead not guilty and to go to trial at all.  Although the language of the Proffer Agreements is unquestionably and deliberately broad, the mere assertion in argument that the Government must prove its case, or has failed to do so beyond a reasonable doubt, will not open the door to admissibility of the proffer statement.  Such legal arguments are the core of the right to a jury trial and the right to effective representation of counsel, and they have not been waived.  Although the Proffer Agreements might have provided that

12

going to trial at all would waive the immunity and permit use of Defendant's statements in the Government's case-in-chief, it did not do so.  Rights to trial by jury and to effective representation of counsel are so central to our criminal justice system, that this Proffer Agreement cannot be read to waive use immunity by merely deciding to go to trial upon a plea of not guilty, in the absence of a clearer expression of such waiver.

On the other hand, as in Krilich, if factual innocence is implied through the defense's cross-examination of a Government witness, then Defendant may be presenting evidence inconsistent with his proffer statements, and such statements would become admissible to that extent, pursuant to ¶4 of the Proffer Agreements.  Obviously, any argument by counsel asserting such factual innocence would also trigger admissibility of the proffer statements, to the appropriate extent, under the Proffer Agreements.

In other words, argument by defense counsel asserting factual innocence of the Defendant, or commenting upon factually exculpatory evidence, will waive the immunity protection of ¶1 of the Proffer Agreements.  An argument by defense counsel upon legal requirements for conviction in a criminal case, such as holding the Government to the standard of proof beyond a reasonable doubt on each essential element or reminding the jury of the meaning of Defendant's plea of "not guilty" (but without

asserting Defendant's factual innocence) will not waive the immunity protection of ¶1 of the Proffer Agreements.

## CONCLUSION

Accordingly, Defendant Kelvin Ford's motion to limit the Government's use at trial of his proffer statements will be granted in part and denied in part, consistent with the foregoing. The accompanying Order is entered.


| | |
|---|---|
| **May 11, 2005** | **s/ Jerome B. Simandle** |
| DATE | JEROME B. SIMANDLE<br>United States District Judge |

14